# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **THE LANDS COUNCIL, a Washington nonprofit corporation and FRIENDS OF THE CLEARWATER, an Idaho nonprofit corporation, the ECOLOGY CENTER, a Montana nonprofit corporation, and EUGENE and MOLLIE EASTMAN, individuals**<br><br>**Plaintiffs,**<br>vs.<br><br>**JONI PACKARD, District Ranger of the Powell Ranger District in the Clearwater National Forest, in her official capacity as District Ranger; LARRY DAWSON, Forest Supervisor of the Clearwater National Forest, in his official capacity as the Forest Supervisor; and U.S. FOREST SERVICE, an agency of the United States,**<br><br>**Defendants.** | CASE NO: CV05-210-N-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in the above-entitled matter is Plaintiffs The Land Council ("TLC"), Friends of the Clearwater, the Ecology Center, and Eugene and Mollie Eastman's (collectively referred to as the "Plaintiffs") Motion for Temporary Restraining Order and/or Preliminary Injunction (Docket No. 3). The Complaint and motion were received by Federal Express by the United States Attorney for the District of Idaho on Wednesday, May 25, 2005.[1] In the motion, Plaintiffs request the Court to enter a restraining order to stop the timber harvest activities or road building associated with the Wendover Fire Salvage Categorical Exclusion ("CE") Project ("Wendover CE Project) on the Powell Ranger District in the Clearwater National Forest. Plaintiffs allege in their motion that logging

---

[1] The Court makes no finding at this time as to whether the Defendants have been properly served in accordance with Fed. R. Civ. P. 4.

is scheduled to begin on May 25, 2005 and represented to the Court's staff attorney they expect the logging to continue for the next 2 to 3 weeks. Plaintiffs have requested oral argument on their motion. A hearing was held on Wednesday, June 1, 2005. The Court took the motions under advisement and the Court is now prepared to rule on the motions.

## Jurisdiction and Venue

Plaintiffs allege the logging in the Wendover CE Project is in violation of National Environmental Policy Act ("NEPA"), 42 U.S.C. § § 4321, et seq., the National Forest Management Act ("NFMA"), 16 U.S.C. § § 1600, et seq. and implementing regulations, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, et seq. This Court has jurisdiction over the Complaint as it presents a federal question (28 U.S.C. § 1331) and judicial review of final agency action (5 U.S.C. § 702). Venue is proper as the Clearwater National Forest is located in the District of Idaho.

## Factual Background

In 2003, the Wendover Fire burned approximately 3,440 acres of forest land. Approximately 1,979 acres was of a non-lethal nature and resulted in under-burn with limited mortality. The Wendover CE Project will log approximately 117 acres in 3 different units in the forest. Approximately 1.1 million board feet of timber will be harvested. The purpose of the project is to utilize fire-killed or severely damaged trees in a timely manner in order to provide social and economic benefits while there is still value associated with the burned timber. The timber will be harvested using helicopter logging. One new helicopter pad will be built and other existing pads will be used. One temporary road of approximately 200 feet in length will be built to access one of the helicopter landing pads. The new road and landing site will be obliterated after use.

After scoping the project in October 2003, the Forest Service received comments from the public. A Decision Memo was issued in 2004, but later withdrawn after it was determined the impact of road building had not been addressed. Another public comment period was offered. On March 25, 2005, Joni Packard, District Ranger for the Powell Ranger District in the Clearwater National Forest issued a Decision Memo authorizing the project to begin immediately.[2] The Decision Memo is final agency action as there is no right to appeal pursuant to 36 C.F.R. § 215.12(f).[3] Pyramid Lumber received the logging contract on or about May 17, 2005. The Complaint in this matter was filed on May 25, 2005.

The Forest Service Handbook sets forth the requirements for a categorically excluded project in 1909.15 - Environmental Policy and Procedures Handbook, Chapter 30.3 - Categorical Exclusion from Documentation, effective July 6, 2004:

> 1. A proposed action may be categorically excluded from further analysis and documentation in an environmental impact statement (EIS) or environmental assessment (EA) only if there are no extraordinary circumstances related to the proposed action and if:
>
>> a. The proposed action is within one of the categories in the Department of Agriculture (USDA) NEPA policies and procedures in Title 7, Code of Federal Regulations, part 1b (7 CFR part 1b), or
>>
>> b. The proposed action is within a category listed in section 31.12 or 31.2 of this Handbook.
>
> 2. Resource conditions that should be considered in determining whether extraordinary circumstances related to the proposed action warrant further analysis and documentation in an EA or an EIS are:
>
>> a. Federally listed threatened or endangered species or designated critical habitat, species proposed for Federal listing or proposed critical habitat, or Forest Service sensitive species.
>>
>> b. Flood plains, wetlands, or municipal watersheds.

---

[2] The final Decision Memo relied upon by the Court is Attachment 4 to Docket No. 7.

[3] 36 C.F.R. § 215.12 provides for certain decisions and actions that are not subject to appeal. Subsection (f) provides: "Decisions for actions that have been categorically excluded from documentation in an EA or EIS pursuant to FSH 1909.15, Chapter 30, section 31."

> c. Congressionally designated areas, such as wilderness, wilderness study areas, or national recreation areas.
>
> d. Inventoried roadless areas.
>
> e. Research natural areas.
>
> f. American Indians and Alaska Native religious or cultural sites.
>
> g. Archaeological sites, or historic properties or areas.
>
> The mere presence of one or more of these resource conditions does not preclude use of a categorical exclusion. It is the degree of the potential effect of a proposed action on these resource conditions that determines whether extraordinary circumstances exist.

In the present case, the Decision Memo indicates the District Ranger found the Wendover CE Project fit category 31.2-13, described in Forest Service Handbook id_1909.15-2003-2, July 23, 2003. This category is for "salvage of dead and/or dying trees not to exceed 250 acres, requiring no more than ½ mile of temporary road construction. The proposed action may include incidental removal of live or dead trees for landings, skid trails and road clearing." The harvest of fire damaged trees is a specific example of what would fit this category definition. Id.

The Forest Service maintains that if a project meets the categorically exclusion requirements and there are no extraordinary circumstances listed in (a) through (g) which are effected by the project, no Environmental Assessment ("EA") or Environmental Impact Statement ("EIS") are required to be prepared for the project. In this case, District Ranger determined there were no effects to extraordinary circumstances.

Plaintiffs allege in their Complaint and motion, that the Forest Service failed to adequately consider the extraordinary circumstances set forth in the Forest Service Handbook, failed to comply with NEPA, failed to take into account the cumulative effects of this logging project, and failed to disclose and allow the public to comment on the impact on uninventoried roadless areas. At the hearing, Plaintiffs' witnesses challenged that the Forest Service is cutting live green trees and not dead or dying trees. Plaintiffs seek to have the Court enjoin the logging and require the Forest Service to

complete an EIS on the project. Defendants maintain they have complied with the requirements for a categorical exclusion and are not cutting live trees, so the motion for injunctive relief should be denied.

**Standard of Review**

In the Ninth Circuit, to obtain a temporary restraining order or a preliminary injunction a plaintiff must show "either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the merits." Miller v. California Pac. Medical Ctr., 19 F.3d 449, 456 (9th Cir. 1994). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Id.   When the public interest is involved, it must be a necessary factor in the Court's consideration of whether to grant preliminary injunctive relief. Caribbean Marine Services Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir.1988).

The relative hardship to the parties is the critical element in deciding at which point along the continuum a stay is justified. Sun Microsystems v. Microsoft Corp., 188 F.3d 1115, 1119 (9th Cir. 1999). Under any formulation of this sliding test, the moving party must demonstrate a significant threat of irreparable injury.  Arcamuzi v. Continental Air Lines 819 F.2d 935, 937 (9th Cir. 1987). However, In environmental cases, the plaintiffs' burden of showing the possibility of irreparable harm is lessened due to the nature of public resources involved. Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 545 (1987) ("Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable. If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment."). Similarly, the "balance of hardships tips decidedly toward the plaintiff" in cases concerning resource extractive activities in national forests. See Kootenai Tribe of Idaho, 313 F.3d 1094, 1115 (9th Cir. 2002) (there is a "public interest in preserving our national forests in their

natural state" and "restrictions on human intervention are not usually irreparable in the sense required for injunctive relief").

Under the APA, the standard for reversing agency action is if the Court finds the agency acted in a manner that was "arbitrary, capricious, and abuse of discretion or otherwise not in accordance with the law." 5 U.S.C. § 760(2)(A). The agency action is provided a presumption of administrative regularity. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 415 (1971). The courts give great deference to agencies in promulgating appropriate regulations to achieve the goals of a statute passed by Congress. The Court may not substitute its judgment for that of the agency absent the Court finding the agency has acted "arbitrary, capricious, and abuse of discretion or otherwise not in accordance with the law." Finally, the Court reviews an agency's NEPA analysis under a "rule of reason." Salmon River Concerned Citizens v. Robertson, 32 f.3d 1346, 1356 (9th Cir. 1994).

**Analysis**

1. Categorical Exclusion and NEPA.

Plaintiffs do not contend the Categorical Exclusion regulations are not authorized or are in contravention of the law. Rather, the Plaintiffs argue the Forest Service has not complied with the requirements for a Categorical Exclusion based on certain extraordinary circumstances and that even if the Forest Service Handbook provides for a categorical exclusion, the Forest Service still has to comply with NEPA which requires and EIS to be completed that analyzes uninventoried roadless areas and cumulative impacts of this project in light of past, present and reasonably foreseeable future projects. The Court finds the Plaintiffs argument is misplaced.

Categorical exclusions by definition means something less than full compliance with the rigors of an EA or EIS so long as a proposed action does not have a significant effect on the environment. If a project satisfies the agency's requirements for a categorical exclusion and extraordinary circumstances are not affected, no EIS needs to pre prepared and the agency has complied with NEPA. "The purpose of NEPA is to require disclosure of relevant environmental considerations that

were given a 'hard look' by the agency, and thereby to permit informed public comment on the proposed action and any choices or alternatives that might be pursued with less environmental harm." Lands Council v. Powell, 379 F.3d 738, 744 (9th Cir. 2004). NEPA requires federal agencies to prepare an EIS for any major federal agency action "significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C).

In NEPA, Congress established a Counsel on Environmental Quality ("CEQ") and the CEQ promulgated regulations implementing NEPA and requiring federal agencies to follow the regulations. 40 C.F.R. § 1500 et seq. The regulations provide that in deciding whether an EIS is required pursuant to 42 U.S.C. § 4332, the agency should determine if the project or proposal is one which does not require an EIS because it is categorically excluded. §1501.4(a)(2). The term "categorical exclusion" is defined:

> Categorical exclusion means a category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of these regulations (§ 1507.3) and for which, therefore, neither an environmental assessment nor an environmental impact statement is required. An agency may decide in its procedures or otherwise, to prepare environmental assessments for the reasons stated in § 1508.9 even though it is not required to do so. Any procedures under this section shall provide the extraordinary circumstances in which a normally excluded action may have a significant environmental effect.

§ 1508.4. If the proposed action does not fall within the parameters of § 1501.4(a), then the agency must prepare an EA in accordance with § 1508.9 and then based on the EA, determine whether to prepare an EIS for the project. The CEQ approved the Forest Service's categorical exclusion procedures and informed the Forest Service:

> Once established, the agencies will satisfy NEPA when using these categorical exclusions by determining whether a proposed action falls within the description of the activities and by reviewing the proposal to determine whether extraordinary circumstances exist, an environmental assessment or an environmental impact statement would be prepared before proceeding with the proposed action.

Letter from Chairman of CEQ, dated July 22, 2003 to the Chief of the Forest Service as cited in Colorado Wild v. United States Forest Service, case 04-—2472, D. Colorado, May 26, 2005.

Basically, there are two situations when an EIS has to be prepared. If a project's scope is too large to fit the limited parameters of an agency's categorical exclusion or if it is determined a project fits a categorical exclusion but there will be a significant impact to an extraordinary circumstance included in the categorical exclusion, then an EA must be prepared to determine if an EIS is required.

As discussed by the Ninth Circuit in <u>Alaska Center for the Environment v. United States Forest Service</u>, 189 F.3d 851, 858 (9th Cir. 1999), the court summarized the impact of a categorical exclusion:

> If a proposed action fits within a categorical exclusion, NEPA review is not required unless there are "extraordinary circumstances" related to the proposed action. Forest Service Handbook, 1909.15, 30.3(1)(b); 40 C.F.R. § 1508.4. Extraordinary circumstances are those circumstances "in which a normally excluded action may have significant environmental effect." 40 C.F.R. § 1508.4; Forest Service Handbook at ¶ 30.5. The scoping process is used to "determine the scope of the issues to be addressed and for identifying the significant issues related to a proposed action." 40 C.F.R. § 1501.7. The Forest Service conducts scoping for "all proposed actions, including those that would appear to be categorically excluded" Forest Service Handbook, 1909.15, 30.2(3). If extraordinary circumstances having a significant effect on environment are revealed during scoping, then the Forest Service conducts an EA. <u>Id.</u> at 30.2(3).

It is also interesting to note, that because categorical exclusions are so limited, agencies need not provide for public comment for projects meeting the requirements for categorical exclusion. 40 C.F.R. Section 1503.

In the case at bar, the District Ranger determined the Wendover CE Project satisfied the requirements of the Forest Service's categorical exclusions under NEPA and that "no conditions exist which might cause the action to have significant effects on the human environment, or adversely affect extraordinary circumstances." Decision Memo, p. 9. Therefore, the failure to complete an EIS on this project is not a violation of NEPA.

As to the extraordinary circumstances set forth in the Forest Service Handbook, the Court finds the Decision Memo and administrative record address each of these extraordinary circumstances and the District Ranger's determination that "no conditions exist which might cause the action to have significant effects on the human environment, or adversely affect extraordinary circumstances" is not arbitrary, capricious or otherwise not in accordance with the law.

2. Forest Service failed to analyze impacts on uninventoried roadless area.

Plaintiffs argue the Forest Service failed to inform the public uninventoried roadless area was included in cutting units 1 and 3 and the Forest Service failed to evaluate this project from the perspective that the area to be logged could be inventoried roadless area in the future as it meets the requirements for "wilderness area" under the Wilderness Act, 16 U.S.C. § 1131, et seq. The Court finds this argument unpersuasive.

First, under a categorical exclusion, public comments need not be allowed. In this case, the Forest Service provided for public comment. Plaintiffs and others could have raised issue of the location of cutting units 1 and 3 being in potential roadless area in their comments. Although the land in Units 1 and 3 may become inventoried roadless area in the future, there are no present plans to inventory this land as roadless or to designate such land as wilderness. The District Ranger testified as the Forest Plan is updated, areas will be reviewed to determine if they meet the Forest Service requirements for wilderness or roadless areas. Moreover, the District Ranger testified that the limited salvage cutting in Units 1 and 3 would not impact the future designation of a 5,000 acre parcel which would include Units 1 or 3 (or if excluded there would be other acres to reach the 5,000 acre threshold) for a wilderness designation. There is no current plans to designate the acres in the cutting units as roadless or wilderness.

Second, the Forest Service's categorical exclusion lists as a relevant extraordinary circumstance whether the land at issue is "inventoried" roadless area. It is undisputed in this case that the land at issue to be logged is NOT inventoried roadless area. Therefore, the argument that the Forest Service should have considered the impact on uninventoried roadless areas was not required.

The categorical exclusion from an EIS is an exception based on the small size and the specific nature of a project. While the Court agrees the protection of potential wilderness areas and roadless areas is important, this small project does not require roadless or wilderness analysis since it falls under a categorical exclusion. Stated another way, since the project does not involve "inventoried"

roadless areas, there is no effect on this extraordinary circumstance that would require additional documentation regarding the potential impact on "uninventoried" roadless areas.

3. <u>Failed to consider the cumulative effects of this project in conjunction with past, present and reasonably foreseeable projects.</u>

Plaintiffs allege the Forest Service failed to conduct a thorough analysis of the cumulative effects of this project. Under the CEQ's NEPA regulations, when preparing an EIS, a federal agency must adequately consider, analyze, and disclose the individual and cumulative environmental impacts of the proposed action and alternatives to it. 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1502.16.

A "cumulative impact" under NEPA means "the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (Federal or non-Federal) or person undertakes such other actions." 40 C.F.R. § 1508.7. Cumulative impacts "can result from individually minor but collectively significant actions taking place over a period of time." <u>Id.</u>

As clarified by the Ninth Circuit Court of Appeals in <u>Neighbors of Cuddy Mountain v. United States Forest Service</u>, 137 F.3d 1372, 1379 (9th Cir. 1998), in order for the agency to "consider" cumulative effects, "some quantified or detailed information is required," since, without it, "neither the courts nor the public, in reviewing the Forest Service's decisions, can be assured that the Forest Service provided the hard look that it is required to provide." <u>Id.</u> General statements about "possible" effects and "some risk" are generally insufficient, and it is not appropriate for the agency "to defer consideration of cumulative impacts to a future date." <u>Id.</u> at 1380.

In this case, the Court finds the decision maker considered the cumulative effects of this small salvage operation and concluded no cumulative effects for fish, water, wildlife, soils, and fire would occur as a result of the salvage logging. Decision Memo, pp. 10 and 16. Moreover the detailed cumulative effects analysis Plaintiffs seek to apply to this case does not apply since the project falls under the categorical exclusion and an EIS need not be prepared. Nor have Plaintiffs established a

pattern of using categorical exclusions to avoid the preparation of EISs for projects in this forest or that the cumulative effects of past, present and reasonably foreseeable future projects are not being considered by the decision maker.

Plaintiffs argue that there have been at least 16 logging projects in and around the Lolo Trail National Historical Landmark since 1960. The Forest Service did not dispute the fact that past logging has occurred, rather the Forest Service evaluated whether the historical corridor would be impacted by the cumulative effect of this project. Even the Plaintiffs' own witness testified that the view was great from the trail. The patchy thinning of the fire burned areas is different than clear cutting and the Plaintiffs have failed to establish that this small scale salvage harvest would detrimentally impact the views from the historical Lolo trial or that the Forest Service did not consider past, present and reasonably foreseeable logging activities when it approved this project.

4. <u>Failed to consider or address the impacts of the project on soil degradation as required under the Forest Plan.</u>

Plaintiffs argue the Forest Service failed to adequately consider the impacts on soil degradation. The Court respectfully disagrees with this argument. According to the Decision Memo and the administrative record, the Forest Service used interdisciplinary teams of resource specialists who conducted on-site assessments concerning soil, water, air, endangered species, fish, wildlife, cultural and historic resources. Specifically, the record reflects that the Forest Service soil scientist conducted a field inspection of the proposed project and the assessment of the soils was included in a the soil scientists report. <u>See</u> Administrative Record, Doc. F-36 and E-15. Based on the testing, it was determined the Forest Service's soil standards would be satisfied by the project. This Court must defer to the expertise of the Forest Service and finds such agency did not act arbitrarily or capriciously in reaching the conclusion that any impact on the soil was not significant or in violation of established soil standards.

5. <u>Failed to consider how the project will impact old growth forest</u>.

Plaintiffs next argue the Forest Service failed to consider how the project will impact old growth timber. The Court respectfully disagrees. The Decision Memo and administrative record support that old growth was considered, but due to the fire, stands of trees that were formally classified as old growth are no longer classified as old growth due to the mortality caused by the fire. Decision Memo, p. 3. These stands were inspected to determine if they remained old growth and the health of the trees. <u>Id.</u> The stands were changed on the database so the total amount of old growth was recalculated for these analysis areas. <u>Id.</u> The remaining viable old growth still satisfies the Forest Plan an no viable old growth trees are being harvested although large, old dead or dying trees are being harvested under this project. The Court does not find the Forest Service acted arbitrarily or capriciously or otherwise not in accordance with the law nor did it violate its Forest Plan for maintaining old growth forests in electing to proceed with this small scale salvage harvest.

6. <u>Green trees are being cut in this salvage harvest.</u>

While not raised in the briefing, Plaintiffs argued at the hearing that green trees appear to be being harvested based on the trees marked. The burden is on Plaintiffs to establish that the remedy requested is appropriate. While the Court finds the Plaintiffs' testifying witnesses were well meaning, it was equally clear that much of their testimony lacked objectivity and was based on hearsay, opinion, or something less than scientific knowledge. The Court is required to give due deference to the expertise of agency specialists.

The Court finds Plaintiffs have not provided the Court with scientific evidence that counters the science used by the Forest Service to determine its marking guidelines for trees to be harvested. While Plaintiffs' witness, Mr. Eastman, testified that he believed 80% of the trees marked to be cut were green trees, he admitted he did not test the trees cambium or apply the marking guidelines used by the Forest Service. Rather, he eyeballed the trees which seemed green. This observation of trees is inconclusive since it provides no evidence the marking guidelines are incorrect or were incorrectly

applied. The Court is satisfied after reviewing the administrative record provided and the supplemental declarations submitted by the Defendants[4] relating to the field examination and testing of marked trees that the marking guidelines for determining the trees to be harvested are not arbitrary, capricious or otherwise not in accordance with the law. Moreover, the Forest Service's sampling and testing of marked trees after the Decision Memo was issued supports that the marking guidelines were correct at detecting dead or dying trees 99% of the time. The Court is satisfied that only dead or dying trees[5] are being cut as part of this salvage timber harvest and the Plaintiffs' objection to green trees being cut is denied.

7. <u>Forest Service failed to adequately take into account the historical impact of the project.</u>

Plaintiffs allege the project will impact the views from the historical Lewis and Clark Lolo Trail. The Court finds the Forest Service consulted with the respective historical organizations and the Nez Perce Tribe and no party had an objection to this small salvage operation. None of the organizations charged with management responsibilities or oversight of the Trail or historic interests expressed concern. Additionally, the Forest Service limited the harvest time to prevent activity during the peak Lewis and Clark celebration in August and September. Third, the project does not harvest time or build roads in the historical corridor. Fourth, the archeologist reviewed and approved the project. Fifth, while Plaintiffs argue that the view from the Lolo Trail is adversely effected, it is difficult to see how removal of some dying or dead trees with a significant amount of trees retained in any give area would adversely effect this view. This is not a clear cut operation and is being done by helicopter to avoid the problems suggested by Plaintiffs. For these reasons, the Court finds the Forest Service did not act arbitrarily, capriciously or otherwise not in accordance with the law when considering the heritage of the area and the impact on the historical trails located near the project area.

---

[4] <u>See</u> Notice of Filing Declarations of Tam White and Joni Packard, Docket No. 10.

[5] The Court realizes all trees will die, but the marked trees in this case are those trees dying prematurely due to poor health from the fire, beetles or other causes.

**Conclusion**

The purpose of NEPA is to require decision makers to take a "hard look" at the impact of a project before action is taken. In this case, the Decision Memo supports that the District Ranger did take a "hard look" at the project and determined it fell within a categorical exclusion based on the nature of logging fire burned trees that only maintain economic value for a limited amount of time. While not necessary for a categorical exclusion, the Forest Service requested public comments and responded to such comments. The Forest Service determined the project satisfied the requirements of a categorical exclusion and would not adversely effect the extraordinary circumstances. Since the project fit within the categorical exclusion and was determined not to significantly impact the listed extraordinary circumstances, the Forest Service did not need to compete an EA or EIS on the project. The Court further finds that Plaintiffs have failed to carry their burden in establishing the Forest Service acted arbitrarily, capriciously or otherwise not in accordance with applicable laws relating to the use of the categorical exclusion or regarding Plaintiffs' specific objections to the project.

Based on the reasons discussed in this Order, the Court finds Plaintiffs have not shown "either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the merits." Miller v. California Pac. Medical Ctr., 19 F.3d 449, 456 (9th Cir. 1994). Therefore, the motions for temporary restraining order and/or preliminary injunction must be denied.

**Order**

Being fully advised in the premises, the Court hereby orders that Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction (Docket No. 3) are **DENIED**.

DATED: **June 3, 2005**

Honorable Edward J. Lodge
U. S. District Judge